[No. B094591. Second Dist., Div. Three. Nov. 2, 1995.]

MARTIN SUMAN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BMW OF NORTH AMERICA, INC., Real Party in Interest.

COUNSEL

Lawrence J. Hutchens for Petitioner.

No appearance for Respondent.

Lewis, D'Amato, Brisbois & Bisgaard and Jonathon Kaplan for Real Party in Interest.

OPINION

**CROSKEY, Acting P. J.**—This case presents the novel question of how a jury should be instructed regarding imposition of statutory civil penalty damages under California's so-called "lemon law" enacted to protect consumers against a manufacturer's failure to honor warranty obligations. Civil penalties are authorized for both willful and nonwillful misconduct. We deal here with an award based on the latter.

In this mandamus proceeding, petitioner and plaintiff Martin Suman (plaintiff), seeks relief from the trial court's decision to revoke an order it had previously made in contemplation of the partial retrial of this case. That order was made pursuant to this court's earlier determination that plaintiff may be entitled to mandamus relief regarding certain issues in the retrial of the civil penalties portion of his case against real party in interest and defendant BMW of North America, Inc. (defendant). A retrial of the case was made necessary by this court's earlier reversal, in part, of a judgment entered in plaintiff's favor against defendant and by our remand for further proceedings on the issue of civil penalties sought by plaintiff against defendant. In his appeal from that judgment, plaintiff had challenged the penalties portion of the judgment and we found jury instruction issues raised by plaintiff in that appeal to have merit. It now appears that it is necessary for this court to provide further guidance to the trial court in the retrial of this matter by devising jury instructions for the new trial.

### BACKGROUND OF THE CASE

This case began as a consumer lawsuit against defendant over one of the vehicles which it manufactured. Plaintiff had purchased one of defendant's cars and with it received an express warranty. Thereafter, plaintiff repeatedly (16 times) took the car to defendant's car dealerships to be repaired for the same malfunction. Plaintiff requested more than once that defendant either

replace the car or refund to the plaintiff the consideration he paid for it (less an amount for plaintiff's use of the car before he discovered the problem). Defendant declined to do either.[1] Eventually, plaintiff tired of having the car repaired and he never bothered to pick up the car from the last BMW dealer to which he had taken it.

Plaintiff sued defendant under the Song-Beverly Consumer Warranty Act (the Act, Civ. Code, § 1790 et seq.),[2] seeking, among other things, rescission of his purchase contract, restitution, and civil penalties against defendant. He recovered approximately $33,000 in actual damages. In his appeal from the judgment, plaintiff challenged the portion of the jurors' special verdict wherein they decided not to assess a civil penalty against defendant. Plaintiff asserted the trial court had erroneously instructed the jury on the issue of civil penalties.

On March 8, 1994, we filed an opinion in this case in which we held the trial court had indeed given the jury erroneous instructions regarding the question under what circumstances the jury could impose civil penalties against defendant. (*Suman* v. *BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 9-13 [28 Cal.Rptr.2d 133].) We reversed the judgment to the extent it awarded plaintiff zero dollars in civil penalties and we remanded the case for further trial on the sole issue of such penalties.

Upon remand, and prior to jury selection, the trial court indicated its intention to advise the new jury of the special verdict which the jury in the original trial had rendered, including the portion of the verdict which this court had previously determined to be tainted by the erroneous jury instructions given in the original trial. Plaintiff petitioned this court for mandamus relief and we notified the court and the parties that we were considering granting a writ (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 [203 Cal.Rptr. 626, 681 P.2d 893]) and if granted, would direct the trial court to eliminate, in the retrial of the case, all references to the first jury's determination on the issue of civil penalties, and all references to certain portions of the Civil Code which address civil penalties in consumer lawsuits. On June 6, 1995, the trial court issued an order complying with our directions. Thereafter, defendant noticed a motion for reconsideration of that trial court order. The trial court granted the motion, indicating its intention to revoke its June 6, 1995, order, and further indicating its hope that this court would give "some guidance as to what are the meaningful standards upon

---

[1]At trial, the parties stipulated that defendant never offered to replace the car or refund the purchase price (minus the amount for plaintiff's use of the car).

[2]All statutory references herein are to the Civil Code.

which a jury can impose civil penalties." Plaintiff then filed the instant petition for a writ of mandate.

ISSUES

This mandamus proceeding presents two questions for our resolution. The first is whether the new jury should be informed of the former jury's decision regarding civil penalties under section 1794, subdivision (c). The second is whether the civil penalty provisions in section 1794, subdivision (e) are void because they are impermissibly vague as to when a jury may impose civil penalties on a new car manufacturer.

DISCUSSION

1. *Relevant Provisions of the Act*

Under the Act, a buyer of consumer goods[3] may sue a manufacturer for damages for "a failure to comply with any obligation under [the Act] or under an implied or express warranty or service contract." (§ 1794, subd. (a).) "The measure of the buyer's damages in an action under [section 1794] shall include the rights of replacement or reimbursement as set forth in subdivision (d) of Section 1793.2,[4] [as well as certain rights set out in the Commercial Code]." (§ 1794, subd. (b).) As noted above, the jury determined plaintiff was entitled to recover actual damages against defendant.[5]

In addition to recovery of damages, attorney fees and costs, a plaintiff may recover civil penalties against the defendant. Subdivision (c) of section 1794 provides for a civil penalty (except in certain cases which are not relevant here) when a defendant *willfully* fails to comply with an obligation under the Act, under a warranty, or under a service contract. Under subdivision (c), "the judgment *may* include . . . a civil penalty which shall not

---

[3]Section 1791 defines "consumer goods" as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables."

[4]Section 1793.2, subdivision (d)(2) sets out the "replacement or reimbursement" rights for new car buyers. Subdivision (d)(2) provides: "If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer . . . . However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle."

" 'Nonconformity' means a nonconformity which substantially impairs the use, value, or safety of the new motor vehicle to the buyer or lessee." (§ 1793.22, subd. (e)(1).)

[5]Additionally, plaintiff was entitled to reasonable attorney fees and costs. (§ 1794, subd. (d) & subd. (e)(1).)

exceed two times the amount of actual damages." (Italics added.) Thus, if the trier of fact finds the defendant willfully violated its legal obligations to plaintiff, it has discretion under subdivision (c) to award a penalty against the defendant. Subdivision (c) applies to suits concerning any type of "consumer goods," as that term is defined in section 1791 of the Act (*ante*, fn. 3).

Subdivision (e) of section 1794, which pertains only to suits involving violations of the "replacement or reimbursement" provisions for *new motor vehicles* (*ante*, fn. 4), also gives the trier of fact discretion to award civil penalties of up to two times the amount of the plaintiff's damages.[6] However, subdivision (e) does not require a finding that the defendant's failure to live up to its legal obligations was willful. (*Suman* v. *BMW of North America, Inc., supra*, 23 Cal.App.4th at pp. 9-13.)

## 2.  *Prior Application of Subdivision (e) of Section 1794 to This Case*

■   When this case was first tried, the trial court instructed the jury it would have to find that defendant willfully violated its legal obligations to plaintiff before it could impose civil penalties on defendant. Additionally, the special verdict form given to the jury asked the jury what civil penalty, if any, it would assess against the defendant for a willful refusal to replace

---

[6]Paragraph (1) of subdivision (e) of section 1794 provides: "Except as otherwise provided in this subdivision, if the buyer [of a new motor vehicle] establishes a violation of [the 'replacement or restitution' provisions of] paragraph (2) of subdivision (d) of Section 1793.2, the buyer shall recover damages and reasonable attorney's fees and costs, and may recover a civil penalty of up to two times the amount of damages." This provision for recovery of civil penalties is qualified by other paragraphs in subdivision (e).

Paragraph (2) of subdivision (e) provides: "If the manufacturer [of the new motor vehicle] maintains a qualified third-party dispute resolution process which substantially complies with Section 1793.22, the manufacturer shall not be liable for any civil penalty pursuant to this subdivision." At trial, defendant stipulated it did not have a qualified third party dispute resolution process.

Paragraphs (3) and (4) of subdivision (e) provide that after a reasonable number of attempts have been made to conform the problematic new motor vehicle to the applicable express warranties of the manufacturer, the buyer may serve on the manufacturer a written request that it comply with the "replacement or restitution" provisions in section 1793.2, subdivision (d) (2). If the notice is not served, the manufacturer is not liable for civil penalties under subdivision (e) of section 1794. If the notice is served and the manufacturer complies, within 30 days, with its responsibilities under section 1793.2, subdivision (d) (2), the manufacturer is not liable for a civil penalty under subdivision (e) of section 1794.

Paragraph (5) of subdivision (e) prohibits a double recovery of civil penalties for the same violation. It provides: "If the buyer recovers a civil penalty under subdivision (c), the buyer may not also recover a civil penalty under this subdivision for the same violation."

the vehicle or reimburse the purchase price of plaintiff's car.[7] The jury's answer was "0." Because the instruction and verdict form were prejudicial to plaintiff's right to have the civil penalty issue addressed by the jury under both subdivision (c) of section 1794, which requires a finding of willful failure to comply, and subdivision (e) of section 1794, which does *not* require such a finding of willfulness, we reversed the portion of the judgment which awarded plaintiff no civil penalty and remanded the case for a retrial on the issue of civil penalties. (*Suman v. BMW of North America, Inc.,* *supra,* 23 Cal.App.4th 1.)

Now the case has come before us again, prior to the new trial, and the parties dispute whether the new jurors may properly be informed, by the trial court or the defendant, that the previous jury had determined there was no willfulness on defendant's part in failing to live up to its "replacement or reimbursement" obligations under subdivision (d)(2) of section 1793.2. It is obvious to this court that giving such information to the new jury would be an incorrect statement of the previous jury's determination since the special verdict form used by the first jury does not indicate whether the jury declined to award civil penalties because (a) the jury found there was no willful failure of defendant to comply with its legal obligations to plaintiff, or (b) the jurors determined defendant had willfully failed to comply but they simply used their discretion under subdivision (c) of section 1794 and decided not to award civil penalties. The only thing that *can* properly be concluded from the jury's answer to question No. 6 is that the jury determined it would not award civil penalties under subdivision (c) of section 1794.

---

[7]The following are the questions given to the jury in the special verdict, and their answers thereto.

"*Question No. 1*: Did plaintiff's 735I BMW suffer from a particular nonconformity or non-conformities which substantially impaired the use, value or safety of the vehicle?" The jury answered "Yes."

"*Question No. 2*: Was BMW of North America, Inc. the Defendant herein, given the opportunity to repair the nonconformity or non-conformities you identified in response to Question No. 1?" The jury answered "Yes."

"*Question No. 3*: Was BMW of North America, Inc. unable to repair the substantial nonconformity or non-conformities you identified in your answer to Question No. 1 after a reasonable number of attempts to repair.?" The jury answered "Yes."

"*Question No. 4*: What amount of actual damages, if any, do you find that plaintiff suffered as a legal cause of defendant's conduct, not including any civil penalty?" The jury answered "$33,516.86," which figure was reduced, by stipulation of the parties, by about $900.

"*Question No. 5*: How many miles do you find that plaintiff's vehicle traveled prior to the time Mr. Suman first delivered the vehicle to the defendant for repair of the substantial nonconformity or nonconformities identified in response to Question No. 1?" The jury answered "2,083."

"*Question No. 6*: What amount of civil penalty, if any, do you assess against BMW of North America, Inc. for willful refusal to replace or reimburse the purchase price of plaintiff's vehicle (not to exceed two times the amount of actual damages)?" The jury answered "0."

Additionally, giving the new jury the information regarding willful failure would be irrelevant since plaintiff indicated to the trial court that in presenting his case to the new jury, he would be seeking civil penalties only under subdivision (e) of section 1794 and the theory of his right to civil penalties would be that defendant failed to maintain a qualified third party dispute resolution process. Moreover, the disputed information could be prejudicial to plaintiff since even if the special verdict used by the original jurors did indicate they failed to find defendant's acts to be "willful," revealing that finding to the new jurors might color their deliberations in defendant's favor. Willfulness is not an element of subdivision (e) of section 1794. Therefore, directing the jury's attention to even the subject of whether defendant willfully violated its legal duties to plaintiff could be prejudicial to plaintiff since it would emphasize something that is not specifically required by subdivision (e) of section 1794.

### 3. The Constitutionality of the Provisions in Subdivision (e) of Section 1794

Defendant strenuously asserts that the penalty provisions in subdivision (e) of section 1794 are void because they are impermissibly vague as to the standards to be used by a jury which is considering whether to impose such sanctions. Defendant argues that unlike subdivision (c) of section 1794, which requires the trier of fact to find the manufacturer willfully failed to live up to its legal duties to the consumer, subdivision (e) has no standard at all by which it can be determined whether civil penalties are warranted under its provisions. Thus, the argument goes, the civil penalty provisions in subdivision (e) are void for vagueness. As discussed below, a recent decision by the United States Supreme Court shows that with appropriate guidance, a jury can make use of the civil penalties provisions in subdivision (e). However, before we further address the issue of vagueness, we first examine the intentions of the Legislature in enacting provisions for civil penalties in both subdivision (c) and subdivision (e) of section 1794.

### a. Comparison of Subdivisions (c) and (e) of Section 1794

In enacting the civil penalties in subdivisions (c) and (e) of section 1794, the Legislature appears to have taken a "carrot and stick" approach to consumer protection, with subdivision (c) providing the sticks, and subdivision (e) providing carrots. Subdivision (c) informs manufacturers of consumer goods that their willful failure to live up to their legal duties to their consumers can result in civil penalties. These subdivision (c) penalties have been likened, by courts, to punitive damages. (*Kwan* v. *Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184 [28 Cal.Rptr.2d 371];

*Troensegaard* v. *Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 226-227 [220 Cal.Rptr. 712].) Noting that "the Act is manifestly a remedial measure, intended for the protection of the consumer[,]" the *Kwan* court went on to characterize the penalties in subdivision (c) as "important as a deterrent to deliberate violations." (*Kwan*, *supra*, at p. 184.)

In contrast, much of subdivision (e) of section 1794 is devoted to setting out methods by which a manufacturer of *new motor vehicles* can avoid incurring civil penalties. (3) The overall thrust of subdivision (e) is the Legislature's preference for using alternative forms of dispute resolution when a new motor vehicle buyer has repeated difficulties getting his or her nonconforming vehicle repaired properly. The intent of the Legislature vis-à-vis subdivision (e) is encouragement of both the new motor vehicle manufacturer and the new motor vehicle buyer to work out their problems without resort to court intervention. To that end, subdivision (e) offers manufacturers an incentive (carrot) for (1) maintaining a dispute resolution process and/or (2) responding promptly to a consumer's demand for replacement or restitution. In paragraph (2) it provides that if the manufacturer of new motor vehicles "maintains a qualified third-party dispute resolution process which substantially complies with Section 1793.22['s formula for a qualified third-party dispute resolution process], the manufacturer shall not be liable for any civil penalty pursuant to this subdivision." Additionally, paragraph (4) of subdivision (e) provides that if the manufacturer complies with the "replace or reimburse" provisions of subdivision (d)(2) of section 1793.2 within 30 days after receiving a proper notice from the new motor vehicle customer requesting that the manufacturer comply with said provisions, the manufacturer will not be liable for civil penalties under subdivision (e). As a means of encouraging consumers to communicate their troubles to the manufacturer prior to filing a law suit, paragraph (3) of subdivision (e) provides that before a consumer can receive civil penalties under subdivision (e) in a lawsuit against the new motor vehicle manufacturer, the consumer must have first attempted a reasonable number of times to get his or her new vehicle repaired by the manufacturer or its agents and must also have served on the manufacturer "a written notice requesting that the manufacturer comply with paragraph (2) of subdivision (d) of Section 1793.2" (the "replace or reimburse" provisions).

Thus, subdivision (e) seeks to ensure that courts of law are used as a last resort by consumers of new motor vehicles. It is under this legislative scheme that a trier of fact must determine whether to award a civil penalty to plaintiff.

b. *Analogy to Standards for Imposing Punitive Damages*

Defendant's claim that section 1794, subdivision (e) lacks standards by which a jury can determine whether to impose civil penalties

against a manufacturer of new vehicles is appropriately examined in light of a similar claim made in *Pacific Mutual Life Insurance Co.* v. *Haslip* (1991) 499 U.S. 1 [113 L.Ed.2d 1, 111 S.Ct. 1032] (*Pacific Mutual*) with respect to another civil penalty—punitive damages. In that case, four employees working in Alabama sued one of their employer's insurance companies (Pacific Mutual Life Insurance Co. (Pacific Mutual), through which the employer provided life insurance for its employees), and also sued one of Pacific Mutual's insurance agents. The suit arose after the agent took certain premiums from the employer and failed to pass them along to another of the employer's insurance companies (with which the employer had its employee group health care coverage), thereby rendering the plaintiffs uninsured with respect to the promised health care coverage, a status which required them to pay for all of their health care out of their own pockets for a period of time. One of the plaintiffs was unable to pay her physician in a timely manner and had a judgment rendered against her and in favor of a collection agency to which her physician had assigned his claim for services. Plaintiffs' suit against Pacific Mutual was based on a theory of respondeat superior.

The trial court instructed the jurors that if they found liability for fraud, they could award punitive damages to the plaintiffs. The jury instruction informed the jurors that the purpose of such damages was not to compensate the plaintiffs for any injury but rather was to punish the defendants and to make an example of the defendants, and thereby to deter the defendants and others from "doing such wrong in the future." The instruction also informed them it was in their discretion whether to award punitive damages and thus they did not have to award them unless they felt they should. Additionally, the jurors were instructed that if they determined to award punitive damages, "in fixing the amount, [they] must take into consideration the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong." In its general verdict of $1,040,000 to one of the plaintiffs, the jury apparently included $840,000 in punitive damages.

In presenting its appeal to the Supreme Court of the United States, Pacific Mutual contended that state courts in Alabama (where the lawsuit was brought) afforded jurors "unbridled . . . discretion" in making decisions on punitive damages which in turn violated Pacific Mutual's due process rights. The court noted in its opinion that it granted review so that it could examine "the punitive damages procedures and award in the light of the long-enduring debate about their propriety." (*Pacific Mutual*, *supra*, 499 U.S. 1, 8 [113 L.Ed.2d 1, 13], fn. omitted.)

The court observed that punitive damages are a traditional part of state common law tort law, noting that cases in American courts as early as 1784

and 1791 had permitted their use. (*Pacific Mutual, supra*, 499 U.S. at p. 15 [113 L.Ed.2d at p. 18].) It further stated: "Under the traditional common-law approach, the amount of the punitive award is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct. The jury's determination is then reviewed by trial and appellate courts to ensure that it is reasonable. [¶] This Court more than once has approved the common-law method for assessing punitive awards." (*Ibid.*) The court then went on to review what other United States Supreme Court opinions have said about punitive damages, specifically noting that the high court has repeatedly observed that lack of definite rules for the jury in fixing an amount of punitive damages was a hallmark of punitive damage common law. In concluding its historical review, the court focused on due process challenges under the Fourteenth Amendment and said: "So far as we have been able to determine, every state and federal court that has considered the question has ruled that the common-law method for assessing punitive damages does not in itself violate due process. [Citation.] In view of this consistent history, we cannot say that the common-law method for assessing punitive damages is so inherently unfair as to deny due process and be *per se* unconstitutional." (*Id.* at p. 17 [113 L.Ed.2d at p. 19].)

However, the *Pacific Mutual* court did not stop there its analysis. It stated that while punitive damages are not in and of themselves unconstitutional, as applied in any given case they may be. Nevertheless, the court declined to "draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case." (*Pacific Mutual, supra*, 499 U.S. at p. 18 [113 L.Ed.2d at p. 20].) It did "say, however, that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus." (*Ibid.*)

Next, the *Pacific Mutual* court reviewed the specific instructions given to the jury in that case. It noted that ". . . the instructions gave the jury significant discretion in its determination of punitive damages. But that discretion was not unlimited. It was confined to deterrence and retribution, the state policy concerns sought to be advanced." (*Pacific Mutual, supra*, 499 U.S. at p. 19 [113 L.Ed.2d at pp. 20-21].) Moreover, observed the court, the jury was informed that if it intended to award punitive damages, it needed to consider the type and degree of the defendant's wrongful conduct and the necessity of preventing future wrong. Thus, said the court, the jury had been informed of the purpose and nature of punitive damages and also informed of the fact that it need not award them to the plaintiffs. The court concluded that the instructions "reasonably accommodated Pacific Mutual's interest in rational decisionmaking and Alabama's interest in meaningful individualized

assessment of appropriate deterrence and retribution. The discretion allowed under Alabama law in determining punitive damages is no greater than that pursued in many familiar areas of the law as, for example, deciding 'the best interests of the child,' or 'reasonable care,' or 'due diligence,' or appropriate compensation for pain and suffering or mental anguish. As long as the discretion is exercised within reasonable constraints, due process is satisfied. [Citations.]" (*Id.* at p. 20 [113 L.Ed.2d at p. 21], fn. omitted.) Additionally, the court noted that trial courts have the authority to interfere with a jury's verdict of punitive damages if they think it necessary and that appellate courts can check the conclusions of trial courts in that regard. (*Id.* at pp. 20-23 [113 L.Ed.2d at pp. 21-23].)

The court concluded that while the punitive damages imposed against Pacific Mutual and in favor of a particular plaintiff were possibly "close to the line," they were not violative of the Fourteenth Amendment's due process clause even though the award was "more than 4 times the amount of compensatory damages, . . . more than 200 times the out-of-pocket expenses of [the particular plaintiff] and . . . much in excess of the fine that could be imposed for insurance fraud under [Alabama's statutes]." (*Pacific Mutual, supra,* 499 U.S. at pp. 23-24 [113 L.Ed.2d at p. 23].)

Applying *Pacific Mutual* to the instant case, we see that the high court's approval of the few jury instructions on punitive damages given in that case is an indication that precise and lengthy standards are not necessary for instructing a jury on imposition of section 1794, subdivision (e) civil penalties in actions brought in this state under the Act.

   c.   *Jury Instructions for Use of Subdivision (e)'s Provisions for Civil Penalties*

Ordinarily, a plaintiff seeking subdivision (e) civil penalties will be before the trier of fact which decides the other issues in his or her case. Therefore, that trier of fact will know the history of the consumer-plaintiff's and manufacturer-defendant's relationship with each other and will have an adequate factual context against which to determine whether to award subdivision (e) penalties. In the case before us, however, the new jury must be informed of the parties' history with each other. This can be done by the court advising the jury of (1) the nature of the suit brought by plaintiff against defendant and (2) the relevant factual issues resolved by the prior trial.

Such information should include the following. Plaintiff brought his lawsuit under California laws designed to protect consumers. Certain provisions in those laws apply only to consumers and manufacturers of new motor

vehicles. One of those laws enables a jury in a suit such as this one, upon proof of certain facts, to impose a civil penalty on a manufacturer that has not lived up to its legal duties to a consumer. Those facts were addressed in a prior trial in this case and should be considered by the jury to be established in this case. They are:

1. The manufacturer of the vehicle (here BMW) gave the buyer (here plaintiff) a written warranty.

2. The vehicle contained a nonconformity or nonconformities covered by the warranty; that is, something about the vehicle was not as it was warranted to be.

3. One or more of these nonconformities substantially impaired the use, value or safety of the vehicle.

4. Upon discovery of the nonconformity or nonconformities, the buyer presented the vehicle to the manufacturer or its authorized repair facility for repair.

5. The manufacturer (or its authorized repair facilities) was unable to repair the nonconformity or nonconformities after a reasonable number of attempts.

6. When it was unable to repair the nonconformity or nonconformities after being given a reasonable number of opportunities to do so, the manufacturer did not either (1) replace the subject vehicle or (2) make restitution to the buyer within thirty (30) days after receiving notice from the buyer of the remedy chosen by the buyer from those two alternatives.

7. The manufacturer did not maintain a qualified third party dispute resolution process as a means of resolving disputes with consumers without their having to file a lawsuit.

The jury should be informed of the purpose of the penalty which it is being asked to consider. It should be told that imposition of the penalty is authorized by law as a means of encouraging manufacturers to resolve their disputes with consumers outside of litigation; that is, if the defendant had maintained a third party dispute resolution process for its customers, it would not be subject to the penalty.

The jury should also be advised that, prior to filing this lawsuit, plaintiff abandoned his car at a BMW dealership after 16 attempts to repair it had

been made, and he no longer owns the car because the finance company repossessed it and sold it. The trial court should also inform the jury that in the prior trial of this case, plaintiff was awarded compensatory damages in the amount of $32,609.87.

Lastly, the jury should be instructed on the following matters. Whether a penalty should be imposed on defendant is a matter left to its sound discretion and its discretion should be exercised without prejudice or passion. The exercise of such discretion should be based on the facts of the case as the jurors have determined them to be from (1) the evidence presented to them at the new trial, and (2) the recitation of *established* facts presented by the trial court. If the jury chooses to impose a penalty, the amount may be up to two times the amount of damages which plaintiff was awarded in the earlier trial. Such penalty would be paid by defendant. There is no definite or required method of determining a penalty nor is the opinion of a witness required as to the amount of a penalty. It is not necessary for the plaintiff to prove that the defendant acted willfully. However, the jury may take into consideration the nature of the defendant's conduct, including the extent to which the defendant did or did not act reasonably or in good faith, in (1) failing to honor plaintiff's demand for replacement of the defective vehicle or restitution, and (2) failing to establish a third party dispute resolution process which could have resolved this matter without litigation.

### DISPOSITION

The alternative writ is discharged. Let a peremptory writ issue directing the trial court to reinstate its order of June 6, 1995, and to conduct further proceedings not inconsistent with this opinion.

Kitching, J., and Aldrich, J., concurred.