John BRADY, Plaintiff,

v.

MERCEDES–BENZ USA, INC., Defendant.

No. C01–4652 EMC.

United States District Court, N.D. California.

Jan. 12, 2002.

Darrel Cameron Horsted, San Francisco, CA, for John Brady.

C. Forrest Bannan, Jemal K. Yarbrough, Bannan Green Frank & Terzian, LLP, Los Angeles, CA, for Mercedes–Benz USA, LLC.

### ORDER FINDING DIVERSITY JURISDICTION PROPERLY VESTS WITH THE COURT

CHEN, United States Magistrate Judge.

On January 12, 2000, John Brady leased from a dealer of Mercedes Benz USA, Inc. (hereinafter referred to as "MBUSA"), a 2000 Mercedes Benz SLK 230 automobile

(hereinafter referred to as the "Automobile"). Comp., ¶ 5. Pursuant to the lease agreement, Brady made a down payment in the amount of $1449.99 (initial lease payment, license, registration and document fees) and agreed to make thirty-five additional monthly payments in the amount of $755.50. May 16, 2002 Decl. of Gregg M. Audet, ¶ 4, Ex. B.

Brady received with the Automobile, an express written warranty which provided, in relevant part, that in the event a defect developed with the Automobile during the warranty period, Brady could deliver the Automobile for repair to any MBUSA designated repair facility. Compl., ¶ 7.

According to Brady, within the warranty period, the "automobile developed several non-conformities, defects, and conditions affecting the safety, value, or use of this vehicle including, [a] defective transmission, gear shifting devises and apparatuses, [b] defective air conditioning, and [c] various other and related malfunctions and defects." Compl., ¶ 8. Brady brought the Automobile to MBUSA designated repair facilities, which were "unable to service or repair the Automobile to conform to the applicable express warranties after a reasonable number of attempts." Compl., ¶ 8. The first repair order was dated July 22, 2000 and indicated mileage on that date to be 7,381 miles. July 2, 2002 Decl. of Darrel C. Horsted, Ex. A.

On October 29, 2001, plaintiff Brady filed a complaint in San Francisco Superior Court for, *inter alia*, violations of the Song–Beverly Consumer Warranty Act, Cal. Civ.Code § 1794, *et seq.*, against defendant MBUSA. The Song–Beverly Consumer Warranty Act (hereinafter referred

to as the "Song–Beverly Act") applies to warranties given for many types of consumer goods in addition to automobiles and is often referred to as California's "lemon law." Cal. Civ.Code § 1794, *et seq.* It also regulates express warranties, including service contracts, covering consumer goods. Cal. Civ.Code § 1794, *et seq.* Enacted in 1970 to improve the lot of consumers who purchase defective products, the Song–Beverly Act contains substantive regulations of warranty terms, disclosure requirements and strengthened consumer remedies. *National R.V., Inc. v. Foreman,* 34 Cal.App.4th 1072, 1077, 40 Cal.Rptr.2d 672 (1995).

Brady alleged that MBUSA: [1] failed to repair defects within reasonable number of attempts; [2] failed to commence repairs within reasonable time and failed to repair defects within 30 days; [3] violated Cal. Civ.Code §§ 1793.2(a) and (b) (failure to maintain sufficient service and repair facilities), § 1794 (failure to provide service and repair facilities with sufficient literature and parts), and § 1791.2(b) (breach of express warranties created by sample or model); [4] breached the express written warranty; and [5] breached an implied warranty of merchantability.

Brady seeks: [i] general damages; [ii] a civil penalty of twice the amount of Brady's total damages pursuant to Cal. Civ. Code §§ 1794(c) and (e);[1] [iii] consequential and incidental damages; [iv] costs of suit, reasonable attorney's fees and prejudgment interest at the legal rate; and [v] such other relief as the Court may deem proper.

On December 3, 2001, MBUSA removed the matter to this Court, pursuant to 28

---

1. Section 1794(c) provides that if the buyer establishes that the seller's failure to comply was willful, a judgment against the seller may include a civil penalty which shall not exceed two times the amount of actual damages. Section 1794(e) provides that successful Song–Beverly Act plaintiffs may recover, in case of violation of Cal. Civ.Code § 1793.2(d)(2) governing repair of new motor vehicles, damages and reasonable attorney's fees and costs, and may recover a civil penalty of up to two times the amount of damages.

U.S.C. § 1441, based on diversity grounds. Thereafter, both parties consented to proceed before a Magistrate Judge. On April 17, 2002, this Court held a case management conference and questioned, *sua sponte*, whether there was a sufficient amount in controversy and invited supplemental briefing on the issue.

The Court, having reviewed the briefs, supporting documentation and record in this case, as well as having heard the argument of counsel on the June 26, 2002 hearing, finds that diversity jurisdiction properly vests in this Court.

The removal statute, 28 U.S.C. § 1441, provides in part, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). District courts have diversity jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332; *see Gibson v. Chrysler Corp.*, 261 F.3d 927, 934 (9th Cir.2001), *cert. denied*, 534 U.S. 1104, 122 S.Ct. 903, 151 L.Ed.2d 872 (2002); *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1004 (9th Cir.2001), *cert. denied*, 535 U.S. 928, 122 S.Ct. 1299, 152 L.Ed.2d 211 (2002). While there is no dispute that the parties are from different states, an issue exists as to the amount in controversy in the case at bar.

**1. Compensatory damages included in the amount in controversy**

Brady seeks compensation as provided for in the Song–Beverly Act. Specifically, Cal. Civ.Code § 1793.2(d)(2)(B) provides that the measure of damages in an action such as this one includes, *inter alia*, restitution "in an amount equal to the purchase price paid or payable by the buyer," reduced by that amount "directly attributable to use by the buyer" prior to delivery of the vehicle back to the dealer for correction of the problem that gave rise to the nonconformity with the warranty. The set-off amount is determined by multiplying the "actual price of the new motor vehicle paid or payable by the buyer ... by a fraction having its denominator 120,-000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle" for correction of the problem. Cal. Civ.Code § 1793.2(d)(2)(C). The Song–Beverly Act applies to leases as well as purchases of consumer goods. Cal. Civ.Code § 1794.4. The lessee is provided the same rights against the lessor (if the leased goods are from lessor's inventory) that the lessee would have had the goods been purchased by the lessee. Cal. Civ. Code § 1795.4(c). Thus, the Song–Beverly Act's provision that the consumer may obtain restitution of the "actual price paid" under § 1793.2(d)(2)(B) applies to auto leases as well as purchases.

However, the Act does not specifically explain how "actual price paid or payable by the buyer" is defined in the context of an automobile lease. Does the "actual price paid or payable" extend to only those payments made in fact by the lessee or to all payments which might be due for the remainder of the lease term? Should it include an early termination fee provided in the lease? Does it include the estimate of total title, license and registration fees and total sales tax payable during the term of the lease whether or not incorporated in part or in whole in the down payment or monthly payments? [2]

---

**2.** The lease in the instant case estimates those expenses to be $4,279.35 during the term of the lease. Under the lease, however, it ap-

pears that the lessee paid nearly $700.00 in sales tax, title and license fees and document

In Brady's Rule 26 Initial Disclosure Statement filed with the Court, he claims restitutionary damages in the amount of $22,603.00, based on a down payment of $1,449.00 and twenty-eight monthly payments of $755.50 each, attorney's fees, and yet to be determined miscellaneous repair costs and associated expenses. At the hearing, Brady's counsel estimated registration fees for 2001 and 2002 to have totaled approximately $700.00. Brady does not claim he has paid sales taxes or other fees not already encompassed by the down payment and monthly lease payments. Accordingly, as best as the Court can ascertain, Brady seeks to recover only those amounts actually paid under the lease ($22,603.00) and ancillary expenses authorized by the Song–Beverly Act ($700.00 in registration fees)—a total of $23,303.00.

Limiting Brady's recovery to payments actually made is consistent with the logic and purpose of the Song–Beverly Act to make the consumer whole. It is also consistent with the general principle of *restitution* embodied in Cal. Civ.Code § 1793.2(d)(2)(B) which seeks to restore the plaintiff to his or her original position. Moreover, similar lemon laws of other states either expressly, or have been interpreted to, require restitution only of actual lease payments made by the lessee, and does not provide, for instance, for the recovery of the full capitalized purchase price or current value of the lease by the lessee. *See Singer v. Land Rover North America, Inc.*, 955 F.Supp. 359, 361 (D.N.J.1997) (lessee entitled to refund of amount actually paid under lease agreement under New Jersey lemon law); *Estate of Riley v. Ford Motor Co.*, 248 Wis.2d 193, 200–01, 635 N.W.2d 635 (2001) (lessee entitled refund of payments made, not ter-

mination value of the vehicle); *Pavese v. General Motors Corp.*, No. 97–3688, 1998 WL 57761, *3 (E.D.Pa. Feb.11, 1998) ("It does not make sense to allow a lessee to recover the full purchase price when the lessee has made lease payments that do not total the full purchase price.").

However, as noted above, the restitution awardable under § 1793.2(d)(2)(B) must be reduced by the amount directly attributable to use (as measured by miles driven) by the consumer prior to the first repair (or attempted repair) of the problem as pro-rated against a base of 120,000 miles. Cal. Civ.Code § 1793.2(d)(2)(B). At the hearing, MBUSA argued that this *pro rata* reduction or offset should be based on the sales price of the automobile and not the total of payments due through the lease ($28,242.49) as the Song–Beverly Act requires pro-ration of the "*actual price* of the new motor vehicle paid or payable by the buyer." Cal. Civ.Code § 1793.2(d)(2)(C) (emphasis added). However, the term *actual price* is used in both subsections (B) and (C) of § 1793.2(d)(2), and as demonstrated above, as used in subsection (B), the term must be construed in the leasing context to refer to lease payments, not capitalized purchase price. On the other hand, the pro-rated off-set in subsection (C) is based not on the lease mileage allowance (here 45,000 miles) or length of the lease term, but on 120,000 miles which presumptively reflects the full life expectancy of a new car. If the offset under subsection (C) is calculated based on the vehicle's pro-rated depreciation over the full 120,000 life expectancy, it makes sense to apply that pro-ration to the full purchase price of the vehicle. Moreover, using the full purchase price in calculating the pro-rated offset is consistent with the

---

fees as part of the down payment. Each monthly payment appeared to include $53.51

in sales tax.

fact that lease payments typically reflect a component for depreciation of the automobile based on its full life expectancy and purchase price.

In this case, the set-off is calculated by taking as the purchase price of the Automobile—the agreed upon value of $46,250.00 specified in the lease—multiplied by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the Automobile prior to the time Brady first delivered the vehicle for repair (7,381 miles). The amount directly attributable to use by Brady prior to discovery of the non-conformities equals $2,844.76. Here, the net total amount of compensatory damages at issue therefore is $20,458.24.

**2. *Civil penalties under the Song–Beverly Act are properly included in the amount in controversy***

■■■■■ The amount in controversy for diversity jurisdiction may include punitive damages if recoverable under state law. *Davenport v. Mutual Ben. Health & Acc. Ass'n,* 325 F.2d 785, 787 (9th Cir.1963); *Conrad Associates v. Hartford Accident and Indemnity Co.,* 994 F.Supp. 1196, 1198–99 (N.D.Cal.1998). As noted above, the Song–Beverly Act does not expressly provide for punitive damages but allows for recovery of a civil penalty against MBUSA. Cal. Civ.Code §§ 1794(c) and (e). Courts have held that the civil penalty under the Song–Beverly Act is akin to punitive damages, because both have the dual effect of punishment and deterrence for defendants. *See Suman v. Superior Court,* 39 Cal.App.4th 1309, 1317, 46 Cal. Rptr.2d 507 (1995) ("these subdivision (c) penalties have been likened, by courts, to punitive damages"); *Kwan v. Mercedes–Benz of N. Am., Inc.,* 23 Cal.App.4th 174, 184, 28 Cal.Rptr.2d 371 (1994) ("the penalty under section 1794(c), like other civil penalties, is imposed as punishment or deterrence of the defendant, rather than to

compensate the plaintiff... it is akin to punitive damages"); *Troensegaard v. Silvercrest Industries, Inc.,* 175 Cal.App.3d 218, 226–28, 220 Cal.Rptr. 712 (1985) ("it is clear that a treble damages award is punitive in nature, imposed as punishment against a defendant, rather than compensation to the plaintiff.")

Thus, there is good reason to include the Song–Beverly Act's civil penalty of up to two times the amount of actual damages in the amount in controversy. Indeed, courts have held in other contexts that treble damages authorized by state law may be included in determining the amount in controversy. *See, e.g., Chabner v. United Omaha Life Ins. Co.,* 225 F.3d 1042, 1046 (9th Cir.2000) (treble damages authorized by state statute could have been taken into account when determining the amount in controversy); *Rosen v. Chrysler Corp.,* 205 F.3d 918, 922 (6th Cir.2000) (possibility of treble damages under New Jersey Consumer Fraud Act included in determining amount in controversy); *St. Paul Reinsurance Co., Ltd., v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir.1998) ("items to be considered in ascertaining the amount in controversy ... are *inter alia* penalties, statutory damages, and punitive damages").

In the case at bar, the Song–Beverly Act in effect authorizes treble damages (compensatory damages plus up to twice of said damages) in the form of a civil penalty. The Complaint alleges MBUSA willfully failed to comply with its obligation under the Song–Beverly Act and violated Cal. Civ.Code § 1793.2(d)(2), thus if Brady prevails, entitling him to treble damages under §§ 1794(c) and (e). Thus, the civil penalty in the amount of $40,916.48 is properly included in the amount in controversy. As such, monetary damages sought by Brady totals $61,374.72.

### 3. Inclusion of the value of other relief sought by Brady

██ As indicated at the June 26, 2002 hearing, Brady seeks, in addition to damages, a declaration that the remainder of the lease is null and void due to MBUSA's breach of warranty and violation of the Act. Should he prevail, he would be relieved of having to make the seven additional monthly payments of $755.50 (over and above the twenty-eight monthly payments for which he seeks restitution) remaining under the lease. The monetary value of that relief is $5,288.50.[3] That value is included in calculating the amount in controversy. *See Glenwood Light and Water Co. v. Mutual Light, Heat and Power Co.,* 239 U.S. 121, 125–26, 36 S.Ct. 30, 60 L.Ed. 174 (1915) (where equitable relief is sought, jurisdiction amount is to be tested by the value of the object to be gained by the complainant); *Hedberg v. State Farm Mutual Automobile Ins. Co.,* 350 F.2d 924, 928 (8th Cir.1965) (in suit for injunction, amount in controversy is tested by the value of the right sought to be gained by the plaintiff). Including the amount of the relief from future payments together with the monetary damages potentially recoverable under the Song–Beverly Act, the amount in controversy is $66,663.22.

### 4. A reasonable estimate of attorneys fees likely to be expended is properly included within the amount in controversy

██ Typically, attorney's fees are not considered part of the amount in controversy for diversity purposes. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155–56 (9th Cir.1998). However, where an underlying statute, such as the Song–Beverly Act, authorizes an award of attorney's fees, such fees may be included in calculating the amount in controversy. *See id.; Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1265 (11th Cir.2000).

It is unclear from the case law, however, what amount of attorney's fees are properly included within the amount in controversy. There are three lines of cases on this point.

The Seventh Circuit has held it is proper to include only those fees incurred as of the date the complaint is filed. *See Gardynski–Leschuck v. Ford Motor Co.,* 142 F.3d 955, 958 (7th Cir.1998). The Seventh Circuit reasoned that an estimate of future fees beyond those incurred in initiating the suit "includes the value of legal services that have not been and may never be incurred, and are therefore no 'in controversy' between the parties." *Id.* at 958. The court further reasoned that "legal fees are avoidable" if the defendant simply gives the plaintiff everything he or she wants as soon as the complaint is filed. In this vane, a "plaintiff who receives everything she asks for in the complaint has no remaining dispute with the defendant;" what she asked for was the damages sought in the complaint together with fees already incurred. *Id.* at 959. Therefore, according to the court, the amount "in controversy" includes claimed damages and only those fees incurred upon filing of the complaint.

Another court has concluded that fees incurred as of the date of removal are included in the amount in controversy. *See Faulkner v. Astro–Med, Inc.,* No. C 99–2562 SI, 1999 WL 820198, *4 (N.D.Cal. Oct.4, 1999).

Other courts, including the Tenth Circuit, have held that a reasonable estimate

---

**3.** That value of this relief is not subject to trebling under the Song–Beverly Act since it does not constitute actual damages recoverable by Brady, but merely the value of ancillary equitable relief.

of fees likely to be recovered may be used in calculating the amount in controversy. *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir.1998); *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1034–35 (N.D.Cal.2002); *Gerig v. Krause Publications, Inc.*, 58 F.Supp.2d 1261, 1265 (D.Kan.1999); *Plus System, Inc. v. New England Network, Inc.*, 804 F.Supp. 111, 116–17 (D.Colo.1992).

■ The Court agrees with the latter line of cases. Despite the internal logic of Seventh Circuit's decision in *Gardynski–Leschuck, supra,* the assumption that a defendant may obviate and hence, exclude from the calculus of the amount in controversy post-complaint attorney's fees by capitulating to a plaintiff's demands does not comport with the reality of litigation. It is a rare occurrence that a plaintiff succeeds in obtaining all he or she seeks simply by filing a complaint. In reality, resources, often substantial, will have to be devoted by the parties before the lawsuit is resolved. The amount of fees commonly incurred in similar litigation can usually be reasonably estimated based on experience. Certainly, attorneys are often called upon by their clients before or at the outset of litigation to give an estimate of the fees likely to be incurred in prosecuting or defending a case to resolution. Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.[4]

In the instant case, counsel for Brady has declared that he charges an hourly rate in the amount of $300. June 27, 2002 Decl. of Darrel C. Horsted Decl. At the time the complaint was filed fees were approximately in the amount of $4,500. *Id.* At the time of removal, fees were approximately in the amount of $5,000. *Id.* MBUSA has submitted a declaration detailing fee awards in similar lemon law cases; that evidence indicates there have been fees awards in several cases of over $60,000. June 25, 2002 Decl. of Jemel K. Yarbrough, ¶¶ 4–7. Given the factual controversies in this case and the scope of discovery anticipated in preparation for trial, it is evident that Brady's attorney's fees, if he prevails, will likely exceed $ 8,336.78—the difference between the amount in controversy (without fees) and the $75,000 jurisdictional minimum. Accordingly, the Court concludes that diversity jurisdiction is properly laid with this Court.

As such the Court determines that the amount in controversy in this case exceeds the requisite amount of $75,000, and that diversity jurisdiction vests with this Court.

**IT IS SO ORDERED.**

---

4. Along with the court in *Simmons v. PCR Technology, supra,* the Court respectfully disagrees with the holding in *Faulkner v. Astro–Med, Inc., supra,* limiting includable fees to those accrued at the time of removal. *Faulkner* relied upon cases which hold that in determining whether removal jurisdiction exists, only the allegations of the complaints and facts known at the time the petition for removal was filed may be considered; later discovered facts do not oust jurisdiction. *See, e.g., Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1993) (cited in *Faulkner* ). But *when* the amount in controversy is estimated is a different question than *what* future fees, if any, should be included in the estimate. While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys fees likely to be incurred cannot be estimated at the time of removal. *See Simmons,* 209 F.Supp.2d at 1035 (measure of attorneys fees through resolution of the suit "should be the amount that can reasonably be anticipated at the time of removal").