Catherine GARDYNSKI–LESCHUCK,
Plaintiff–Appellant,

v.

FORD MOTOR COMPANY,
Defendant–Appellee.

No. 97–3483.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1998.

Decided April 2, 1998.

**956**

Adam J. Krohn (argued), Krohn & Moss, Chicago, IL, for Plaintiff–Appellant.

Mitchell Ware, Cathy A. Pilkington, Jones, Ware & Grenard, Chicago, IL, Michael J. O'Reilly (argued), Dearborn, MI, Defendant–Appellee.

Before EASTERBROOK, RIPPLE, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Frustrated that Ford Motor Company and its dealers could not repair her car to her satisfaction, Catherine Gardynski–Leschuck filed this suit under the Magnuson–Moss Warranty Act of 1975, 15 U.S.C. §§ 2301–12. The unusual jurisdictional clause in this Act, 15 U.S.C. § 2310(d)(1), permits suit by a person claiming to be "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this [Act], *or* under a written warranty, implied warranty, or service contract" (emphasis added). In other words, an aggrieved customer may sue on state-law claims in federal court, whether or not the parties are of diverse citizenship. Gardynski–Leschuck has elected to do just that; her claims rest on Illinois law, which the parties agree governs the enforcement of her warranty. The case was tried to a jury, which decided in Ford's favor. Contending that the instructions were defective, Gardynski–Leschuck asks us to give her a new trial. But there is an antecedent question: subject-matter jurisdiction. The Act contains this proviso:

No claim shall be cognizable in a suit brought [in federal court]—(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests [sic] and costs) computed on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3). This allows 100 or more small claims to be litigated in one case, without regard to the anti-aggregation rules in litigation under 28 U.S.C. § 1332. Although the supplemental jurisdiction statute, 28 U.S.C. § 1367, now makes it possible to add class members with small stakes if any party's claim meets the jurisdictional minimum, see *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928 (7th Cir.1996), § 2310(d) cuts out the need for that single large claim. Even when there is just one plaintiff, the $50,000 minimum in § 2310(d)(3) is easier to satisfy than the current minimum in § 1332(a). Gardynski–Leschuck filed her suit just before the jurisdictional minimum in § 1332 was raised from $50,000 to $75,000, and the parties are of diverse citizenship. It therefore turns out not to matter whether § 2310(d) or § 1332 governs, and we have no occasion to inquire whether Article III permits Congress to dispense with all aspects of the diversity requirement in a case resting on state law, as § 2310(d)(1) does. Cf. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). Under either § 1332 or § 2310, unless the plaintiff has a bona fide claim for the jurisdictional minimum, the case must be dismissed. Gardynski–Leschuck does not have such a claim, and her suit does not come within federal jurisdiction.

■ Gardynski–Leschuck leased a Ford Mustang in February 1996. The car had a purchase price of some $18,500, and this is the figure that matters for jurisdictional purposes. The lease was a financing arrangement, a substantial part of the monthly payment represented interest, and § 2310 (d)(3) requires the exclusion of "interests and costs" from the jurisdictional calculus. (*Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d

Cir.1997), counts finance charges toward the jurisdictional minimum in a warranty case but does not attempt to reconcile this with the statutory exclusion of "interest". We need not decide whether reconciliation is possible, because Gardynski–Leschuck does not argue that finance charges should be counted.) Between February 1996 and July 1997 Gardynski–Leschuck took the car in for service 16 times; it spent approximately 4 months under repair. Let us suppose that the car was a lemon that could not be fixed and therefore had to be replaced or the purchase price refunded. (Ford contends that Gardynski–Leschuck abused the car by using it for racing, a defense the jury may have accepted, but this does not matter for jurisdictional purposes.) The standard remedy under state law for delivery of a defective and useless product is "cover"—the purchase of a conforming product in the market, with damages equal to the price difference. See § 2–712(1) of the Uniform Commercial Code, which Illinois has enacted at 810 ILCS 5/2–712(1). But the cost of cover would be the maximum award. Gardynski–Leschuck had the car for 17 months. Four of these it spent in the shop; the other 13 it was available for use. So one would think that the maximum award is the price of a new Mustang, less credit for the used car returned to Ford and the value of 13 months' use. Gardynski–Leschuck tells us that she revoked her acceptance in November 1996, so perhaps the deduction for use should be smaller, but no matter. However the calculation is run, the total is under $20,000 (and likely short of $5,000), leading us to question the existence of subject-matter jurisdiction.

In response to our request for supplemental briefs, Gardynski–Leschuck submitted this calculation of recoverable damages:

| | | |
|---|---|---|
| 1. | Cost of Vehicle | $18,491.99 |
| 2. | Loss of Use | $2,770.00 |
| 3. | Aggravation/Inconvenience | $750.00 |
| 4. | Reasonable Attorneys' Fees | $28,020.00 |
| | Total | $50,031.99 |

This barely makes the statutory floor. If any of the line items fails, then jurisdiction also fails. We give Gardynski–Leschuck the benefit of the doubt, for "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). But legally impossible damages flunk the "legal certainty" test, *Pratt Central Park Limited Partnership v. Dames & Moore, Inc.*, 60 F.3d 350 (7th Cir.1995), and several (if not all) of Gardynski–Leschuck's demands ask for the impossible.

Take the first two lines: the purchase price, *plus* $2,770 for loss of use during the time Gardynski–Leschuck had the car. That's double counting. Gardynski–Leschuck does not cite to any warranty case in Illinois that calculates the damages by adding the purchase price and loss of use together, or holding that damages can exceed the cost of cover. For reasons we have already given the right base is the cost of cover (that is, the replacement price—the price of a new car less the value of the used vehicle returned to Ford), *less* the value of the use Gardynski–Leschuck obtained, rather than the price of a new car *plus* the cost of securing transportation in some other way before she returned the Mustang. If Ford refunds the purchase price as part of damages, it need not compensate Gardynski–Leschuck for her need to rent or buy a vehicle too, for she would have had to do that if she had never dealt with Ford in the first place. Refund of the purchase price undoes the sales transaction, leaving only the need to deduct the value of the use that Gardynski–Leschuck otherwise would obtain for free.

The third line is problematic because the warranty expressly excludes incidental and consequential damages, of which "aggravation" is an example. UCC §§ 2–316(4) and 2–719 permit the parties to limit or exclude consequential damages, and this warranty did so. Gardynski–Leschuck observes that Illinois courts sometimes say that an exclusion of consequential damages in a warranty will not be enforced when the remedies provided in the warranty failed of their essential purpose. See *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App.3d 980, 989–92, 42 Ill.Dec. 25, 30–33, 408 N.E.2d 403, 408–11 (1st Dist.1980). The "essential purpose" exception to contractual limits on damages has been controversial; some

states reject it outright, and others (of which Illinois is one) have an apparent internal division. Compare *Dynamic Recycling Services, Inc. v. Shred Pax Corp.*, 210 Ill.App.3d 602, 613–15, 155 Ill.Dec. 389, 396–97, 569 N.E.2d 570, 577–78 (2d Dist.1991), with *Adolphson v. Gardner–Denver Co.*, 196 Ill. App.3d 396, 403, 143 Ill.Dec. 86, 91, 553 N.E.2d 793, 798 (3d Dist.1990). See *Art Press, Ltd. v. Western Printing Machinery Co.*, 852 F.2d 276 (7th Cir.1988) (discussing this issue under Illinois law without coming to resolution). But of course the question on the table is not whether, when the warranty's designated remedy fails, courts supply some other remedy. It is whether a buyer who could have covered in the market may obtain a 100% refund *plus* consequential and incidental damages. Gardynski–Leschuck does not identify any Illinois case that permits such a combination of remedies.

 The problems with lines 1, 2, and 3 pale beside those of line 4, the inclusion of attorneys' fees. Legal fees may count toward the amount in controversy when the prevailing party is entitled to recover them as part of damages. *Missouri State Life Insurance Co. v. Jones*, 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933); *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1078 (7th Cir.1986); *Suber*, 104 F.3d at 585. Things are dicier when a statute calls for an award of fees as part of costs, for then the rule that "interests and costs" do not count toward the jurisdictional minimum would take over. *Suber*, 104 F.3d at 588 n. 12 (collecting cases). Fee awards under the Magnuson–Moss Act are included in the judgment rather than costs, see 15 U.S.C. § 2310(d)(2), but as Gardynski–Leschuck seeks her remedy under Illinois law it is not clear whether the fees would be counted among the damages or among the costs. But the answer does not matter. According to Gardynski–Leschuck the $28,020 is how much this litigation has cost to date—that is, it represents outlays or accruals after the complaint was filed. Yet jurisdiction depends on the state of affairs when the case begins; what happens later is irrelevant. *St. Paul Mercury Indemnity*, 303 U.S. at 289–90, 58 S.Ct. at 590–91; *Grinnell Mutual Reinsurance Co. v. Shierk*, 121 F.3d 1114,

1116 (7th Cir.1997); *In re Shell Oil Co.*, 966 F.2d 1130, 1133 (7th Cir.1992). Recovery of less than $50,000 would not retroactively deprive the district court of jurisdiction; similarly, post-filing events that increase defendant's outlay cannot create jurisdiction that was lacking at the outset. *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). According to Gardynski–Leschuck's table, attorneys' fees have just recently put her over the $50,000 threshold—perhaps the cost of preparing the post-argument brief on jurisdiction was the critical event. It would be neither sensible nor consistent with *St. Paul Mercury* to say that there was no federal jurisdiction on the date the complaint was filed, the trial held, or the judgment entered in the district court, but that the appeal enabled counsel to run up the tab and create a jurisdictional basis for further proceedings. Unless the amount in controversy was present on the date the case began, the suit must be dismissed for want of jurisdiction.

One way to determine at the outset the amount in controversy attributable to legal fees would be to use the anticipated outlay, reducing uncertainties to present value much the way the expected value of lost future income is determined in a tort case. Suppose it costs $30,000 to litigate a case like this through a jury trial and appeal, but 90% of similar cases settle quickly with legal expense of $5,000 apiece. Then the expected value of attorneys' fees would be $7,500 in each of the 10 cases: ($30,000 + ($5,000 × 9)) ÷ 10 = $7,500. Only the anticipated (actuarial) value of the legal bill would be includable on the date each case begins.

Yet this calculation includes the value of legal services that have not been and may never be incurred, and are therefore not "in controversy" between the parties. Unlike future income lost to injury, legal fees are avoidable. It is essential to distinguish between the likely course of litigation and the legal rights of the parties. Suppose the McCoys sell a garden rake for $10 to the Hatfields, who find it defective. The Hatfields could buy a new rake at Sears for $10, but instead they file suit against the McCoys under the Magnuson–Moss Warranty Act.

They state in the complaint that they anticipate attorneys' fees of $50,000 (for a total amount-in-controversy of $50,010), because the enmity of the parties makes settlement impossible. Assume this is factual—that the Hatfields and McCoys will fight the case to the last dollar in their bank accounts. Still, the amount "in controversy" between the parties at the outset is no more than $10, the sum the McCoys would have to pay to resolve the case on the date it was filed.

■ Just so here. Suppose that the day after Gardynski–Leschuck filed her complaint Ford had tendered $22,011.99 (the total of lines 1–3) in satisfaction of her demands. Gardynski–Leschuck could not have turned it down on the ground that Ford left out $28,020 in attorneys' fees, for those fees had not then been incurred. Cf. *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), and Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 12 *Federal Practice and Procedure* § 3005.1 (2d ed.1997) (both discussing the treatment of attorneys' fees in offers under Fed.R.Civ.P. 68). A plaintiff who receives everything she asks for in the complaint has no remaining dispute with the defendant, and in this case "everything" was $22,011.99 plus any recoverable legal expenses Gardynski–Leschuck had incurred already. (The extent to which pre-suit expenses are recoverable as attorneys' fees under either § 2310(d)(2) or state law is a subject we do not consider.) Just the other day the Supreme Court held that legal expenses yet to be incurred on the date a suit begins do not create a "case or controversy" within the meaning of Article III. *Steel Co. v. Citizens for a Better Environment*, — U.S. —, —, 118 S.Ct. 1003, 1019, 140 L.Ed.2d 210 (1998). For the same reason, legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount "in controversy" when the suit is filed.

It is hard to see how damages could exceed the cost of cover in a dispute about the quality of a consumer product that does not produce personal injury. But even if damages could be as high as $22,000, they are nowhere near $50,000. The judgment of the district court is vacated, and the case is remanded with instructions to dismiss for want of subject-matter jurisdiction.