**Jacqueline DIAMOND and Chris Diamond, Plaintiffs–Appellants,**

v.

**PORSCHE CARS NORTH AMERICA, INC., Defendant–Appellee.**

No. 02–3585.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 2003.

Decided July 16, 2003.

Before FLAUM, Chief Judge, RIPPLE, and WILLIAMS, Circuit Judges.

**ORDER**

In this case originally brought in state court, Jacqueline and Chris Diamond sued Porsche Cars North America, Inc., alleging violations of the Magnuson–Moss War-

ranty Act and state laws. Because we find that the parties have not demonstrated that there is federal jurisdiction, we vacate the district court's decision and remand with instructions to remand the case back to the Illinois state court system.

## I. BACKGROUND

Jacqueline and Chris Diamond leased a Porsche Carrera from Porsche Financial Services (PFS), which purchased the car from Porsche. In connection with the sale to PFS, Porsche issued PFS several written warranties. As part of their lease, the Diamonds agreed to pay $1,173.10 per month for 39 months in exchange for 10,000 miles of use per year. The payments over the course of the lease, including fees, were to be $46,243.90. At the end of the lease, the Diamonds could purchase the automobile, which was initially valued at $72,500, for an additional payment of $49,575.90.

Shortly after the Diamonds took possession of the vehicle, it exhibited engine and electrical defects that, according to the Diamonds, "substantially impair[ed] the . . . value . . . of the [car]." On several occasions they asked Porsche to repair the car pursuant to the written warranty. Porsche attempted, but failed, to adequately repair the car. As a result, the Diamonds attempted to revoke their acceptance of the lease pursuant to the Magnuson–Moss Warranty Act. Porsche refused and offered no alternative remedy.

In their complaint in state court, the Diamonds sought return of all monies paid, diminution in value of the vehicle, and all incidental and consequential damages. Porsche removed the case to federal court,

asserting federal question jurisdiction pursuant to the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B). The Diamonds moved that the case be remanded to state court, asserting that the Warranty Act's $50,000 amount-in-controversy requirement, id. § (d)(3)(B), had not been satisfied. The district court did not definitively resolve whether the $50,000 jurisdictional minimum had been met, but went on to rule in favor of Porsche on the merits of its 12(b)(6) motion to dismiss.[1] The Diamonds appeal.

## II. ANALYSIS

Federal courts may not decide a case absent subject matter jurisdiction, nor may the parties stipulate that jurisdiction is proper or waive jurisdiction arguments. See U.S. v. Tittjung, 235 F.3d 330, 335 (7th Cir.2000). In cases in which federal jurisdiction is dependant on satisfaction of an amount in controversy, if "the monetary value of a controversy cannot be estimated, litigation must commence in state court." Macken v. Jensen, 333 F.3d 797, 800 (7th Cir.2003).

The Magnuson–Moss Warranty Act permits a consumer to bring a breach of warranty action against an automobile dealer when the amount in controversy is at least $50,000. 15 U.S.C. § 2310(d)(1)(B); Gardynski–Leschuck v. Ford Motor Co., 142 F.3d 955, 959 (7th Cir.1998). This court's opinion in Gardynski–Leschuck provides the method for calculating the amount in controversy for Magnuson–Moss disputes involving automobiles. Simply put, to compute the amount in controversy, 1) begin with the

---

1. The district court noted that "Nowhere in Plaintiffs' Amended Complaint, filed after this case had been removed to federal court, do they assert that the $50,000 jurisdictional minimum of the Warranty Act has been met. . . . Nevertheless . . . the Court . . . assume[s] for the sake of argument that the amount in controversy exceeds $50,000." Diamond v. Porsche Cars North America, Inc., No. 02 C 414, 2002 WL 31155064, at *2, n. 2 (N.D.Ill. Sept.26, 2002).

cost of the replacement vehicle, 2) subtract the present value of the allegedly defective vehicle, and 3) subtract the use value that the plaintiff received from the allegedly defective vehicle. *Gardyinski–Leschuck,* 142 F.3d at 957. This much, then, is settled. What the parties in this dispute failed to do, though given several opportunities, is provide the relevant numbers to plug into the *Gardyinski–Leschuck* formula. For instance, while we might assume that the replacement cost of the vehicle is near the original $72,500 value of the Porsche, neither party tells us this, nor should we speculate as to the answer. This is the parties' duty.

Additionally, neither party has provided an estimate as to the present value of the defective car, but we cannot possibly determine whether the amount in controversy has been met without knowing the value of the car with the alleged defects. The Diamonds have complained that the car had engine and electrical troubles and was unmerchantable, yet indications are that they continued to drive the vehicle. Indeed, even excluding the deduction for the benefit the plaintiffs received from the vehicle, whatever defects existed would have had to have caused the value of a new Porsche to decrease by $50,000. In other words, if we began with an assumption that the cost of a new vehicle is approximately $70,000, to arrive at an amount of $50,000 in controversy, the present value of the car could be no more than $20,000. Plaintiffs' bare-bones assertions regarding

engine and electrical troubles are far from satisfying on this point.

Nor has either party told us the value of use the Diamonds have received from driving the car. The record reveals data which could support several different methods of calculating this amount. For example, we could estimate a maximum use value by looking at the depreciation covered by the Diamonds' lease payments.[2] Based upon the record, the Diamonds have received anywhere from eight to eleven months of use from the car, and have driven it between 10,000 and 15,000 miles. The lease tells us that the 39 payments cover $26,408.24 in vehicle depreciation. This amounts to $677.13 per month, and between $5,417.04 and $7,448.48 of depreciation for the eight to eleven months the Diamonds used the car.[3] But as our analysis demonstrates, even an attempt to piece together values for purposes of calculating the amount in controversy under *Gardynski–Leschuck* is of little use when the parties have not provided critical data necessary to determine the cost of the replacement vehicle or the present value of the defective car.

Besides, in this case the Diamonds' attorney filed an affidavit pursuant to Illinois Supreme Court Rule 222 stipulating that the Diamonds were seeking less than $50,000, and the Rule expressly precludes recovery greater than $50,000 after such an affidavit is filed.[4] "A court that does not have jurisdiction cannot assume it, however worthy the cause. [If] the plain-

---

**2.** As *Gardynski–Leschuck* instructs, much of a lease payment consists of interest charges, which may not be used in determining the amount in controversy. 142 F.3d at 956. The lease in this case tells us exactly how much is rent, which is likely predominately interest charges, and how much is apportioned to vehicle depreciation.

**3.** The mileage method of calculating use value comes to a similar amount. The car depreci-

ates at a rate of $8,126.61 per year (12 months × $677.13 per month), which equals the charge for 10,000 miles of use.

**4.** Illinois Supreme Court Rule 222 limits discovery in all actions seeking money damages not in excess of $50,000, exclusive of interest and fees. It provides that "Any damages on such claims which exceeds $50,000 shall be reduced post-trial to an amount not in excess of $50,000." Ill. Sup.Ct. R. 222(b).

tiffs, before the removal of the case to federal court, stipulate[ ] that they [are] seeking less than [the amount required to bring about federal jurisdiction], the court [is] required to remand the case to state court without further inquiry." *In re Brand Name Prescription Drugs Antitrust Litig.*, 248 F.3d 668, 670–671 (7th Cir.2001).

We are troubled by both parties' counsel's failure to make reference to any of this in their briefs. Our Appellate Rules require that the appellant's brief contain a jurisdictional statement supporting both district and appellate court jurisdiction. FED. R.APP. P. 28(a)(4)(A)-(B). The Diamonds' jurisdictional statement on appeal says simply that "jurisdiction was invoked" pursuant to the Magnuson–Moss Act and that the district court denied the motion to remand, and Porsche, even though as the removing party it has the burden of establishing jurisdiction in the district court, *see Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir.2000), says only that "[p]laintiffs' jurisdictional statement is complete and correct." This is simply unacceptable under our rules. *See Meyerson v. Showboat Marina Casino P'ship*, 312 F.3d 318, 321 (7th Cir.2002) (remanding to state court because of inadequate jurisdictional allegations and entering order to show cause why counsel should not be sanctioned); *Prof'l Service Network, Inc. v. Am. Alliance Holding Co.*, 238 F.3d 897, 903 (7th Cir.2001) (reminding the bar of "the importance of complying with our rules and of the risk that violators run of being sanctioned"); *Tylka,* 211 F.3d at 449 (vacating summary judgment in favor of defendant and remanding case to state court because of inadequate jurisdictional allegations). The failure of both parties to provide evidence that supports a reasonable probability that jurisdiction exists is particularly disturbing given that the district court called attention to this critical issue in its opinion.

## III. CONCLUSION

The judgment of the district court is VACATED, and the case is REMANDED to the district court with instructions to REMAND the plaintiffs' lawsuit back to the Illinois state court system.