In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1641

TAWANNA WARE and ANTHONY WARE,

*Plaintiffs-Appellants*,

*v.*

BEST BUY STORES, L.P.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-00886 — **Mary M. Rowland**, *Judge*.

ARGUED JANUARY 19, 2021 — DECIDED JULY 29, 2021

Before ROVNER, HAMILTON, and ST. EVE, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This appeal raises a question of first impression about the definition of "written warranty" provided in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., a consumer protection statute. But the federal courts lack subject-matter jurisdiction and therefore cannot resolve the issue in this case.

Because this appeal comes to us from the grant of a motion to dismiss for failure to state a claim for relief, our discussion of the merits accepts all facts alleged in the complaint. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1242 (7th Cir. 2021); *Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015). In 2013, Plaintiffs Tawanna and Anthony Ware decided to buy a home-theater system. In discussions with the manager of a Chicago Best Buy store, they decided to buy the then-cutting-edge technology of a large plasma-screen, 3-D television. The manager warned them that plasma-screen televisions frequently experienced longevity problems, and he encouraged them to buy a five-year extended warranty, the "Geek Squad Protection Plan," with the television. The plaintiffs ultimately bought a Samsung 64-inch plasma-screen television for $3,119.99 and the Plan for an additional $519.99. Accounting for other television accessories and discounts applied at checkout, the plaintiffs spent a total of $5,128.44 at Best Buy on the home theater.

The manager's advice was prescient: the plaintiffs' television broke down four years into the Plan's five-year coverage period. They sought repair under the Plan, but Best Buy could not repair the television. In the intervening years, plasma technology had fallen out of favor, so replacement parts were not readily available.

The Plan provided that if the television could not be repaired, Best Buy could elect either to replace the television or to compensate the consumer with a gift card. Best Buy chose to provide the plaintiffs with a gift card, the value of which was keyed to the current market price of a new television of similar quality to the one the plaintiffs had purchased in 2013. For our purposes, suffice it to say that plaintiffs were not

satisfied with Best Buy's inability to repair the television and its subsequent remedial measures, though the complaint does not allege that the gift card value was too low. The parties' submissions in the district court and this court debate a host of other factual issues related to the merits of these claims. Those factual disputes do not affect the merits issues that the district court decided nor the jurisdictional questions that we address.

The plaintiffs filed this suit against Best Buy for violating the Magnuson-Moss Warranty Act of 1975, 15 U.S.C. § 2301 et seq., and against Samsung for violating the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1. The Magnuson-Moss Warranty Act is a consumer protection statute that requires transparency in warranties on consumer products and establishes minimum criteria for different types of warranties and warranty-like products.

The Magnuson-Moss Warranty Act requires that if a warrantied *consumer* good cannot be repaired, the written warranty must give *consumer* a choice of remedy: either replacement or a refund of the purchase price, less reasonable depreciation based on actual use. §§ 2304(a)(4) & 2301(12). The plaintiffs brought suit on behalf of a putative national class of Best Buy customers, claiming that Best Buy violated the Act on the theory that the Plan is a full "written warranty" and that Best Buy's unilateral decision to provide the gift card as the remedy failed to provide consumers with the choice. The district court dismissed the Best Buy claim for failure to state a claim upon which relief can be granted, finding that the Geek Squad Protection Plan did not count as a "written warranty" under the Act.

Plaintiffs' complaint also included claims under state law against Samsung that are relevant to two jurisdictional theories. Samsung manufactured the television they bought, and plaintiffs sought to represent a putative class of Illinois residents who bought Samsung plasma televisions that later failed. They contended that Samsung violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, either by selling televisions that eventually broke down or by failing to stock replacement parts for plasma screen televisions. The district court separately dismissed the claims against Samsung for failure to state a claim. Plaintiffs do not challenge that dismissal on appeal.

The present appeal asks us to apply principles of administrative law and statutory interpretation to the Magnuson-Moss Warranty Act's term, "written warranty," which it defines as, among other things:

> any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which … becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6).

Plaintiffs contend that the Geek Squad Protection Plan fits that definition neatly because it is an undertaking to repair, replace, or refund if the television fails. They further assert that the Plan formed "part of the basis of the bargain" for their

television because they relied on the benefits of the extended warranty period in choosing to purchase this expensive and unreliable product. In the alternative, they claim, the web of bundled discounts they received on the Plan and the home theater system intertwined these contemporaneous purchases so that they were all part of the same bargain.

Best Buy's argument on the merits relies on a 1977 Federal Trade Commission regulation interpreting the "part of the basis of the bargain" language in the Act's definition of a written warranty. See generally 16 C.F.R. § 700.11; see also 42 Fed. Reg. 36112 (July 13, 1977) (adding interpretations of statute in 16 C.F.R. Part 700 after notice and comment). According to the Commission, this statutory phrase means that a "written warranty" "must be conveyed at the time of sale of the consumer product and the consumer *must not give any consideration beyond the purchase price* of the consumer product in order to benefit from the agreement." § 700.11(b) (emphasis added). Thus, according to the regulation, if the consumer pays extra for an extended warranty, then it does not form "part of the basis of the bargain" for the product itself and is not a "written warranty" under the Act even if it meets the other statutory criteria. *Id.*

Best Buy urges us to apply "a reasonably high degree of deference" to the Commission's expertise here and to uphold this longstanding, well-accepted, and easy-to-administer interpretation. See *Miller v. Herman*, 600 F.3d 726, 734 (7th Cir. 2010) (applying *Skidmore* deference and accepting another FTC interpretation of Magnuson-Moss Warranty Act); see generally *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (weight given to agency's interpretation of statute "in a particular case will depend upon the thoroughness evident in its

consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control").

The district court deferred to this regulation and dismissed this case pursuant to Federal Rule of Civil Procedure 12(b)(6): since the Plan is not a "written warranty," Best Buy's failure to provide plaintiffs with the option to elect their remedy is not actionable under the Act.

On appeal, plaintiffs urge us to set this regulation aside. They argue that the regulation is directly contrary to Congress's intent, as the Act was specifically designed to close counterintuitive and consumer-unfriendly loopholes in warranties on consumer products. To plaintiffs, the FTC's interpretation created exactly the kind of loophole the Act was crafted to close. See generally Senate Report 93-151 at 6–8 (general purposes of the Act; suggesting that warranties can and should be sold separately for additional consideration); 40 Fed. Reg. 60168, 60168 (Dec. 31, 1975) (quoting same); cf. House Report 93-1107 at 28 (discussing criticisms of extended warranties).

According to plaintiffs, Congress used deliberately expansive language in the statutory text: "*part* of the basis of the *bargain*." This standard, they posit, echoes the Uniform Commercial Code, where that phrase means, at the very least, that promises upon which consumers rely become part of the basis of the bargain. For sales of goods, the UCC provides in relevant part: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." UCC § 2-313(1)(b). Comment 3 to § 2-313 explains:

> The present section deals with affirmations of fact by the seller, descriptions of the goods or exhibitions of samples, exactly as any other part of a negotiation which ends in a contract is dealt with. No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact.

Courts have recognized the broad, pro-buyer terms of the key phrase, "part of the basis of the bargain." E.g., *Downie v. Abex Corp.*, 741 F.2d 1235, 1240 (10th Cir. 1984) (reversing judgment notwithstanding verdict; rational jury could conclude that supplier's *post-sale* representations became part of the basis of the bargain under any interpretation of that phrase because purchaser relied on them); see also *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 826 (3d Cir. 1999) (outlining consumer-friendly presumptions in UCC definition of "part of the basis of the bargain" and vacating summary judgment for supplier despite undisputed evidence that additional consideration was paid for some extended warranties). Plaintiffs here also cite another FTC regulation telling sellers to refrain from describing warranty-like products that do not meet § 2301(6)'s definition of a "written

warranty" "in a manner that may deceive consumers as to their enforceability under the Act." 16 C.F.R. § 700.3(b).

We cannot tackle these arguments today because the federal courts lack subject-matter jurisdiction over this case. "Subject-matter jurisdiction is the first issue in any case." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). Though Best Buy did not move to dismiss for lack of subject-matter jurisdiction, "we have an independent obligation to determine that jurisdictional requirements are satisfied." *Knopick v. Jayco, Inc.*, 895 F.3d 525, 528 (7th Cir. 2018).

Once jurisdiction has been called into doubt, the proponent of federal jurisdiction bears the risk of non-persuasion. *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006), discussing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936). "Federal courts are courts of limited jurisdiction: 'It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Hart v. FedEx Ground Package System, Inc.*, 457 F.3d 675, 679 (7th Cir. 2006), quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

After argument, we questioned jurisdiction and invited supplemental submissions. The parties have addressed three possible statutes for the district court's subject-matter jurisdiction over plaintiffs' Magnuson-Moss claim: the federal-question statute, 28 U.S.C. § 1331; the supplemental jurisdiction statute, § 1367; and the Class Action Fairness Act, § 1332(d). We address each in turn and conclude that we cannot find subject-matter jurisdiction under any of them.

The Wares originally cited the federal-question jurisdiction statute, 28 U.S.C. § 1331, as the basis of the district court's subject-matter jurisdiction over this claim. Since the Magnuson-Moss Warranty Act is a federal statute, they seem to have reasoned, this claim arises under federal law and the district court had original jurisdiction over it. See *id.*

That reasoning works under most federal statutes, but Magnuson-Moss has additional jurisdictional criteria for federal-question jurisdiction. *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir. 1998). The Act provides that federal courts do *not* have federal-question jurisdiction over breach-of-warranty actions under the Act:

> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
>
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
>
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3).

The Wares' damages are certainly less than $50,000. After all, they paid only about $5,000 for the television and accessories, and the value of a replacement television with four-year-old technology would have been quite a bit less than they initially spent. See *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 406 (7th Cir. 2004) (vacating judgment for lack of jurisdiction; even though purchase price of defective vehicle exceeded

$50,000, actual amount in controversy in warranty claim was less than that threshold).

To reach $50,000, then, the plaintiffs would need to aggregate the putative class members' claims. But the Act requires 100 *named* plaintiffs in a putative class. See generally *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 243–46 (2d Cir. 1986) (discussing origins of named-plaintiff requirement). The Wares have not named any plaintiffs besides themselves, so they cannot satisfy the class-action requirements in the Act. Accordingly, we lack jurisdiction under the Magnuson-Moss Warranty Act and, by extension, § 1331. 15 U.S.C. § 2310(d)(3); *Gardynski-Leschuck*, 142 F.3d at 959; see also *Floyd v. American Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (named-plaintiff requirement is jurisdictional).

Both sides agree that the district court did not have original subject-matter jurisdiction under § 1331 because the plaintiffs did not meet the named-plaintiff requirement. Best Buy accordingly requests that we remand for dismissal for lack of subject-matter jurisdiction.

The plaintiffs now argue that the district court had supplemental or CAFA jurisdiction. These arguments fail because plaintiffs have failed to plausibly allege an amount in controversy that would support jurisdiction under either theory. We generally treat the amount-in-controversy threshold as a "pleading requirement." *Blomberg v. Service Corp., International*, 639 F.3d 761, 763 (7th Cir. 2011) (reversing district court's remand order where defendant told a plausible story about how the amount in controversy exceeded the statutory minimum), quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed" the amount-

in-controversy threshold of a jurisdictional statute, "then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Spivey*, 528 F.3d at 986. Normally, a plaintiff can meet this pleading requirement by simply alleging a plausible amount in controversy. E.g., *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.") (internal footnotes omitted); see also *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (same for removal jurisdiction); *Silha*, 807 F.3d at 174 ("[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement.").

First, the plaintiffs posit that the district court had supplemental jurisdiction over this Magnuson-Moss claim because their complaint invoked diversity jurisdiction for their claims against Samsung. See generally 28 U.S.C. § 1367; see also *Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 844–45 (7th Cir. 2014) (where federal court has diversity jurisdiction over a state-law claim, it may exercise supplemental jurisdiction over a Magnuson-Moss claim that fails to meet the $50,000 amount-in-controversy threshold). The plaintiffs claim that the district court had diversity jurisdiction over their putative Illinois class action claim against Samsung under 28 U.S.C. § 1332(a). If this putative state-law class met the criteria for diversity citizenship, then the district court could have exercised supplemental jurisdiction over the Magnuson-Moss claims. *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 522 (7th Cir. 2003) ("Once we determine that the district court had the power to entertain, under its supplemental jurisdiction, a claim that it actually reached on the merits, the

existence of federal jurisdiction over that claim is established and our review is limited to whether the district court's discretion was abused.").

Under the diversity jurisdiction statute, a district court has subject-matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." § 1332(a)(1). Plaintiffs argue that this putative class met the $75,000 amount-in-controversy requirement because they "alleged that the aggregate damages of class members exceeded $75,000." That is not how amount in controversy is aggregated under 28 U.S.C. § 1332(a): "The general rule is that the claims of multiple litigants cannot be aggregated to reach the jurisdictional amount in controversy." *Travelers Property Casualty v. Good*, 689 F.3d 714, 717–18 (7th Cir. 2012). The plaintiffs' troubles with a four-year-old $3,000 television could not possibly leave more than $75,000 in controversy between them and Samsung. Because the Wares have not met the amount-in-controversy requirement, we need not address whether diversity of citizenship existed.[1]

Finally, the plaintiffs argue that we have jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Federal courts have jurisdiction over putative class actions under CAFA where there are at least 100 plaintiffs, though, unlike with Magnuson-Moss, they need not be named. § 1332(d)(5)(B). For a court to exercise jurisdiction under CAFA, the aggregated amount in controversy must exceed $5

---

[1] The plaintiffs also sought injunctive relief against Samsung, but when we expressed our concerns about jurisdiction, they did not invoke that as a basis of reaching the amount-in-controversy threshold.

million and there must be minimal diversity, so that at least one "member of a class of plaintiffs is a citizen of a State different from any defendant." § 1332(d)(2)(A). The plaintiffs did not plead this case as implicating CAFA and did not invoke that statute until their post-argument memorandum on subject-matter jurisdiction.

The plaintiffs' invocation of CAFA cannot save jurisdiction here because any inference that the amount in controversy exceeds $5 million would be entirely speculative. In the complaint, plaintiffs alleged that there are potentially thousands of class members and the aggregated amount in controversy across the putative Magnuson-Moss class exceeded $50,000. That allegation is not enough for us to plausibly infer that the amount in controversy for the Magnuson-Moss class is actually greater than $5 million, especially given the technical election-of-remedy theory that plaintiffs press here and the lack of any allegations regarding the monetary insufficiency of the gift-card remedy. In their supplemental memorandum, the plaintiffs imply that the amount in controversy is greater than $5 million, but they do not actually make any specific factual allegations or assertions on that point. See *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (conclusory invocation of CAFA is insufficient to establish subject-matter jurisdiction without specific factual allegations; remanding for jurisdictional discovery).[2]

---

[2] The plaintiffs' new argument implicates a split in authority about the interaction between the class requirements under CAFA and the Magnuson-Moss Warranty Act. The Ninth Circuit recently held that even if a putative Magnuson-Moss class action satisfies CAFA's criteria (i.e., minimal diversity of citizenship and the amount in controversy exceeds $5 million), it must still independently meet Magnuson-Moss's named-plaintiff

Because the plaintiffs have not plausibly alleged subject-matter jurisdiction even after that jurisdiction was called into doubt, we find that the district court lacked jurisdiction over this case. Rather than seeking leave to amend their complaint to shore up its jurisdictional defects, see 28 U.S.C. § 1653, the Wares have requested that if we find jurisdiction lacking, we vacate the district court's opinion and judgment and remand for dismissal. We agree that is the right remedy.

The judgment of the district court is accordingly VACATED and this case is REMANDED with instructions to dismiss for lack of jurisdiction. Each side shall bear its own costs on appeal.

---

requirement. *Floyd*, 966 F.3d at 1034–35. Other courts, however, view CAFA as an alternative route to federal jurisdiction so that a putative Magnuson-Moss class need not satisfy both statutes. E.g., *Barclay v. ICON Health and Fitness, Inc.*, 2020 WL 6083704, \*7 (D. Minn. Oct. 15, 2020) (collecting cases on both sides of the split and rejecting reasoning of Ninth Circuit). We need not take sides on this issue here because it does not affect the outcome.